UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STATE FARM LIFE AND ACCIDENT
ASSURANCE COMPANY,

          Plaintiff,

   v.

BETHANY J. HOBIN, *et al.*,

          Defendants.

22-CV-611-LJV-LGF
DECISION & ORDER

---

On August 11, 2022, the plaintiff, State Farm Life and Accident Assurance Company ("State Farm"), commenced this interpleader action against Bethany J. Hobin ("Bethany") and Zachary Beiersdorf ("Zachary"). Docket Item 1 (complaint); Docket Item 5 (amended complaint). The case concerns a life insurance policy that State Farm issued to Bethany's ex-husband, Thomas Beiersdorf ("Thomas"). Docket Item 5. After Thomas died in 2021, both Bethany and Zachary filed claims for the death benefit payable under the policy. *Id.* State Farm has asked this Court to determine who is entitled to the benefit. *Id.*

On March 6, 2023, both Zachary, Docket Item 24, and Bethany, Docket Item 25, moved for summary judgment; on March 8, 2023, Zachary responded, Docket Item 26; on March 14, 2023, Bethany responded, Docket Item 27; and on March 16, 2023, both Zachary, Docket Item 30, and Bethany, Docket Item 29, replied.

For the reasons that follow, Zachary's motion for summary judgment is granted and Bethany's motion for summary judgment is denied.

**BACKGROUND**[1]

In May 2014, State Farm issued a life insurance policy to Thomas. Docket Item 24-1 at ¶ 1; Docket Item 25-2 at ¶ 1. The policy named Bethany as the primary beneficiary and Zachary, Thomas's nephew, as the successor beneficiary. Docket Item 24-1 at ¶ 2; Docket Item 25-2 at ¶ 1; see Docket Item 25-5 at ¶ 6.

Thomas and Bethany married about two years later, on July 8, 2016. Docket Item 24-1 at ¶ 3; Docket Item 25-2 at ¶ 2. Between 2015 and 2019, they had three children. Docket Item 25-2 at ¶ 3; Docket Item 26-1 at ¶ 3. On May 21, 2021, Thomas and Bethany signed a separation and property settlement agreement (the "separation agreement"). Docket Item 25-2 at ¶ 4; Docket Item 26-1 at ¶ 4; see Docket Item 25-6 (separation agreement). Article 8 of the separation agreement provided that Thomas would pay Bethany $334.77 per week in child support and that the two could "seek a modification of the child support order" in certain circumstances. Docket Item 25-2 at ¶ 5; Docket Item 26-1 at ¶ 5; Docket Item 25-6 at 19-20. Article 14 of the separation agreement, which addressed the death of the parties, provided:

> In the event the Husband [Thomas] predeceases the Wife [Bethany], any amounts due the Wife pursuant to this Agreement which remain unpaid by the Husband shall be deemed to be a creditor's claim against the Husband's estate, first applying any life insurance policy in effect at the time of death and the remaining portions being satisfied by property held in the Estate.

---

[1] On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party. See *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011). The following facts—which are not in dispute—are taken from Zachary's and Bethany's statements of undisputed facts, Docket Items 24-1 and 25-2, their responses to each other's statements of undisputed facts, Docket Items 26-1 and 27, and the other filings in this action.

Docket Item 25-2 at ¶ 6; Docket Item 26-1 at ¶ 6; Docket Item 25-6 at 25.  The agreement provided for a comparable arrangement were Bethany to predecease Thomas.  Docket Item 25-6 at 25.

On June 30, 2021, Thomas and Bethany officially divorced.  Docket Item 24-1 at ¶ 3; Docket Item 25-2 at ¶ 7.  The judge who presided over the divorce proceedings accepted the separation agreement as fair and reasonable and incorporated its terms into the judgment of divorce.  Docket Item 25-2 at ¶¶ 8-9; Docket Item 26-1 at ¶¶ 8-9; *see* Docket Item 24-3 (judgment of divorce).

Thomas died on August 24, 2021.  Docket Item 24-1 at ¶ 5; Docket Item 25-2 at ¶ 11.  After his death, "a death benefit in the amount of $99,992.54 became payable" under the State Farm policy.  Docket Item 24-1 at ¶ 6; Docket Item 27 at ¶ 6.  Both Bethany and Zachary filed claims to that death benefit.  Docket Item 25-2 at ¶ 11; Docket Item 26-1 at ¶ 11.

About a year after Thomas's death, State Farm commenced this interpleader action.  Docket Item 1.  It explained that Bethany's "status as [p]olicy beneficiary may be legally revoked" under N.Y. Est. Powers & Trusts Law § 5-1.4 ("EPTL section 5-1.4") because she and Thomas divorced before his death.  Docket Item 5 at ¶ 14.  In that case, Zachary, the policy's "sole [s]uccessor beneficiary," would receive the death benefit.  *Id.* at ¶ 15.  State Farm said that it could not "determine . . . who is entitled to the [d]eath [b]enefit," *id.* at ¶ 21, and indicated that it was "willing and able to pay the [d]eath [b]enefit . . . to whomever this Court shall designate" as the proper recipient, *id.* at ¶ 23.

After that, Bethany and Zachary filed crossclaims against each other, Docket Items 16, 18, and the Court dismissed State Farm from this action after ordering it to distribute the death benefit to the Clerk of the Court, Docket Item 17. Zachary and Bethany then both moved for summary judgment and briefed those motions as noted above.

## LEGAL PRINCIPLES

"A motion for summary judgment may be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). "Summary judgment is appropriate when 'there can be but one reasonable conclusion as to the verdict,' *i.e.*, 'it is quite clear what the truth is,' and no rational factfinder could find in favor of the nonmovant." *Id.* (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), then quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962)). Conversely, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Id.* "In deciding such a motion, the court cannot properly make credibility determinations or weigh the evidence." *Id.*

## DISCUSSION

This case presents a single legal issue: Was Bethany's status as a beneficiary to Thomas's life insurance policy automatically revoked by EPTL section 5.1-4 when the two divorced?

4

I. **EPTL SECTION 5-1.4**

Under EPTL section 5-1.4,

> [e]xcept as provided by the express terms of a governing instrument, a divorce . . . revokes any revocable . . . disposition or appointment of property made by a divorced individual to, or for the benefit of, the former spouse, including . . . a disposition or appointment . . . by beneficiary designation in a life insurance policy.

N.Y. Est. Powers & Trusts § 5-1.4(a). "'Governing instrument' includes . . . a contract relating to the division of property made between the divorced individuals before or after the marriage, divorce, or annulment." *Id.* § 5-1.4(f)(g).

"The underlying intent of [s]ection 5-1.4 is to avoid inadvertent dispositions [of property] to a former spouse because of the [d]ecedent's neglect." *In re Sugg*, 49 Misc. 3d 455, 459, 12 N.Y.S.3d 842, 845 (N.Y. Sur. 2015). "The statute and its legislative history make clear that a decedent must take affirmative measures post-divorce to ensure that a former spouse retains her status as a designated beneficiary on any pre-divorce revocable disposition." *Id.* at 463, 12 N.Y.S.3d at 847. "Failure to do so post-divorce renders the pre-divorce beneficiary designation ineffective unless [a] governing instrument expressly provides otherwise." *Id.* at 463, 12 N.Y.S.3d at 847 (emphasis omitted).

EPTL section 5-1.4 is "clear," *id.* at 459, 12 N.Y.S.3d at 845, "unambiguous," *id.* at 459, 12 N.Y.S.3d at 845, and unforgiving: "The effect of the statute is automatic," *id.* at 460, 12 N.Y.S.3d at 845, and it "creat[es] a conclusive and irrebuttable presumption that any revocable disposition of property to a former spouse is automatically revoked upon divorce" unless expressly provided otherwise by a governing instrument, *U.S. Life Ins. Co. v. Shields*, 171 A.D.3d 1262, 1264, 97 N.Y.S.3d 773, 775 (3d Dep't 2019).

5

## II.    THE MOTIONS FOR SUMMARY JUDGMENT

### A.    Impact of the Separation Agreement and Judgment of Divorce

Bethany argues that EPTL section 5-1.4 does not revoke her beneficiary designation because the separation agreement incorporated by the judgment of divorce is a "governing instrument" that "expressly provides for payment of the death benefit[] to [her]."  Docket Item 25-12 at 3, 7-8.  She says that Article 14 of the separation agreement provides that she must be paid "any amounts due" to her and that the payment must come first from the proceeds of "any life insurance policy in effect at the time of Thomas'[s] death."  *Id.* at 3.  And under Article 8, she says, "Thomas must pay child support to [her]."  *Id.*  In other words, Bethany argues that the separation agreement expressly entitles her to the death benefit because she was "due" prospective child support under the separation agreement and because Thomas's prospective child support payments must be paid from the policy benefits.[2]  *Id.* at 3, 7-8.

Zachary, on the other hand, argues that EPTL section 5-1.4 automatically revoked Bethany's entitlement to the death benefit.  Docket Item 24-2 at 2-3.  He asserts that the separation agreement and judgment of divorce do not "contain any express provision directly addressing the [p]olicy, nor [do they] mandate that [Thomas] . . . maintain any life insurance policy for [Bethany's] benefit."  *Id.*  Therefore, he says, the exception in EPTL section 5-1.4 does not apply.  *Id.*

---

[2] Based on her children's ages and the projected child support payments Thomas would have been required to make under the separation agreement had he lived, Bethany asserts that "at the time of Thomas'[s] death, [she] was owed child support" in excess of $200,000.  Docket Item 25-12 at 8; *see* Docket Item 24-6 (email explaining calculation of Thomas's prospective child support obligations).  Bethany does not claim that any child support payments were past due when Thomas died.  *See* Docket Item 25-12.

6

Zachary is correct:  Neither the separation agreement nor the judgment of divorce refers to the State Farm policy or requires Thomas to maintain life insurance.  *See* Docket Item 24-3 and 25-6.  And Article 14's general reference to "any life insurance policy" held by Thomas, *see* Docket Item 25-6 at 25, does not establish that Bethany retained her status as beneficiary to the State Farm policy.  Given the plain text of the documents, this Court cannot find that either the separation agreement or the judgment of divorce expressly provided that Bethany should receive the death benefit.[3]

But that does not end the inquiry.  Bethany argues that she is entitled to the policy proceeds because Thomas's future child support payments were "an[] amount[] due to [her] . . . which remain[ed] unpaid" at the time of his death.  *See* Docket Item 25-12 at 7-8.  Under Article 14 of the separation agreement, she contends, such debts must be paid first from the life insurance proceeds.  *See id.*  And because those prospective payments total over $200,000, she says, the $100,000 life insurance death benefit must be paid to her.  *See id.*

Zachary argues that Bethany's claim fails because she "cannot show that [Thomas] owed any debt to her pursuant to the [separation agreement] at the time of his death."  Docket Item 24-2 at 4-5.  He notes—and Bethany concedes—that absent an agreement to the contrary, child support obligations terminate at death.  *Id.* at 5 (citing *Mayer v. Mayer*, 142 A.D.3d 691, 37 N.Y.S.3d 145 (2d Dep't 2016)); Docket Item 27-1

---

[3] Zachary's examples of what "express language opting out of automatic revocation" might look like make the shortcomings of the separation agreement clear.  *See* Docket Item 26 at 2 ("Such opt-out language typically reads as follows: 'wife shall remain beneficiary of the husband's life insurance policy through State Farm' or 'husband shall be required to maintain a life insurance [policy] for wife's benefit in the amount of $100,000.'" (citation omitted)).  Those simple fixes were certainly available but were not included in the separation agreement or judgment of divorce.

7

at 3 (same).  And he notes that the separation agreement did not provide that Thomas's child support obligations would continue post-mortem.  Docket Item 24-2 at 5.

Again, Zachary is correct.  There is nothing in the separation agreement extending child support after Thomas's death, and Bethany has offered no evidence of past due payments.  Because Bethany has not provided evidence that Thomas had debts to her that remained unpaid when he died, the policy provision requiring payments of past due debts from insurance proceeds does not save her claim.

Bethany asserts that the "plain language" of Article 14 "makes it clear that the parties contemplated and intended that payments, including child support, be made to Beth[any] following Thomas'[s] death."  Docket Item 27-1 at 3.  But that is not accurate.  Article 14 does not mention child support payments at all, let alone provide that those payments would continue after Thomas's death.  See Docket Item 25-6 at 25.  And the plain language of Article 14 covers only past due debts, not those that might accrue in the future.  So Bethany's position finds no support in Article 14's actual text.[4]

And for several reasons, this Court cannot stretch to interpret Article 14 as imposing post-mortem child support obligations on Thomas.  First, the Court rejects

---

[4] Bethany says that Article 14 "would be superfluous" if her interpretation were not accepted.  See Docket Item 29 at 2.  But that is not correct, as the following examples illustrate.  The separation agreement provided that Bethany and Thomas would sell their marital residence and equally divide the "net sales proceeds."  Docket Item 25-6 at 9-10.  Suppose that the home sold for $100,000 and the funds were deposited into Thomas's bank account but that he spent or lost the money and then died before transferring Bethany her share.  In that situation, Bethany would be entitled to recover her share—$50,000—from the death benefit because that money was due to her under the separation agreement.  Or suppose Thomas was behind three months in his child support payments.  In that situation, Bethany could recoup those past due payments from the life insurance proceeds.  But in neither of those situations would Bethany become the beneficiary of the State Farm policy, nor would she be entitled to the remainder of the death benefit after collecting the money she was due.

Bethany's argument that Article 14 has no meaning unless interpreted as providing for child support payments after Thomas's death.  *See* Docket Item 27-1 at 3.  As demonstrated by the examples above, *supra* at n.4, Article 14 addresses amounts that are owed at the time of death because it explicitly refers to "amounts due . . . which remain unpaid," *see* Docket Item 25-6.  In fact, Bethany's argument would make the words "which remain unpaid" meaningless.  *See Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 111 (2d Cir. 2008) ("The rules of contract construction require us to adopt an interpretation which gives meaning to every provision of the contract."). Moreover, Article 8 belies the argument that Bethany is owed child support after Thomas's death because it permitted "modification of the child support order" in several circumstances.  *See* Docket Item 25-6 at 20.  So Bethany's contention that Thomas owed her prospective child support of over $200,000 is speculative because it is impossible to predict whether his child support obligations would have continued—let alone remained constant—until the children reached age 18.

In short, Thomas's child support obligations terminated at his death because there is no evidence that he and Bethany agreed otherwise.  Bethany therefore is not entitled to the death benefit to satisfy Thomas's future child support obligations.

In light of the plain text of the separation agreement and judgment of divorce, Bethany's argument that those documents are an express re-designation of her beneficiary status is too tenuous to withstand scrutiny.  Because there is no language in the separation agreement or judgment of divorce clearly demonstrating the intent that Bethany receive the death benefit, EPTL section 5-1.4 automatically revoked her entitlement to the death benefit when she and Thomas divorced.

### B.     Policy Arguments

Perhaps recognizing the weakness of her primary argument, Bethany also asserts an argument aimed at the intent of EPTL section 5-1.4.  More specifically, Bethany says that Thomas wanted her to receive the death benefit to support their children.  In fact, she includes affidavits from friends and family, an attorney, and the life insurance agent who sold Thomas the policy at issue to that effect.  *See* Docket Items 25-6, 25-8, 25-9, and 25-10.  Therefore, Bethany says, awarding her the benefit would not result in an "inadvertent" disposition of property—the sort of situation that section 5-1.4 was designed to avoid.  *See* Docket Item 25-12 at 5-9 (arguing that the Court should consider the "very unusual circumstances" of this case).

In addition, Bethany explains that she and Thomas divorced not because they "grew apart" but because they were concerned "for her safety and the safety of their children":  Thomas "had significant gambling debts" and "was being pursued by people to whom he owed money."  *Id.* at 4, 8.  She also says that on several occasions, Thomas expressed to others an intent that Bethany receive the death benefit and concern that his children be cared for "should something happen to him."  *Id.* at 5-9.  "It does not require a stretch of the imagination to understand why a father would want to provide for his young children in the case of his death," she concludes.[5]  Docket Item 27-1 at 3.

---

[5] Bethany also contends that she "is being 'punished' for marrying Thomas": Because Thomas designated her the beneficiary of the policy before they married, she says, she would have remained the beneficiary absent the marriage and subsequent divorce.  Docket Item 27-1 at 4.  But even if that is true, it does not change the effect of EPTL section 5-1.4.

The Court understands that Bethany and Thomas may not have divorced for the "usual" reasons that underly the policy behind EPTL section 5-1.4.  *See* Docket Item 25-12 at 4-6, 8-9.  And the Court understands that "Thomas'[s] failure to change the beneficiary of the life insurance policy" may have been "a conscious decision" to "help[] Beth[any] care for their children."  *Id.* at 9.  But the individual circumstances of a divorce—no matter how unusual—cannot overcome the automatic effect of EPTL section 5-1.4.  Bethany cites no authority suggesting otherwise.  *See generally* Docket Item 25-12.

If "payment of the life insurance policy death benefit[] to Beth[any] was . . . the result intended by Thomas," as Bethany asserts, *see id.* at 9, then Thomas and the attorney who drafted the separation and divorce papers were obligated to expressly state that intent in a governing instrument.  Despite Bethany's repeated contention that Thomas did so in the separation agreement, the plain text of that document—which neither mentions the State Farm policy nor provides for post-mortem child support—shows otherwise.[6]

## CONCLUSION

The Court is sympathetic to Bethany's situation.  Raising three young children alone is difficult.  Doing so while grieving the loss of a loved one is all the more so.  And the Court struggles to imagine the hardship involved when that loved one also is the children's father.

---

[6] As an alternative, Thomas could have redesignated Bethany the beneficiary of the State Farm policy after their divorce or designated the children beneficiaries of the policy.  But he did not do either of those things.

11

But EPTL section 5-1.4 does not allow the Court to consider those circumstances. Under the law, Bethany lost the right to the death benefit when she and Thomas divorced, even if that was not Thomas's intent. And this Court sees no way to avoid that conclusion in good conscience.

Accordingly, Zachary's motion for summary judgment, Docket Item 24, is GRANTED, and Bethany's motion for summary judgment, Docket Item 25, is DENIED. The Clerk of the Court shall disburse the death benefits to Zachary and close this case.

SO ORDERED.

Dated:   February 27, 2024
         Buffalo, New York


    */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE